**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------- X

CITIGROUP, INC.,

                  **Plaintiff,**

        **- against -**

WACHOVIA CORP., *et al.*,

             **Defendants.**

--------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**OPINION AND ORDER**

**08 Civ. 8668 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/09

> *THE COURT: "If it acts like a defense and sounds like a defense*
> *and quacks like a defense, then it's a defense."*

> March 11, 2009 Oral Argument

## I.    INTRODUCTION

On October 9, 2008, defendants Wachovia Corporation and Wells

Fargo & Company removed this action ("the pending action") – and an earlier

action based on the same facts ("the original action") – to federal court pursuant to

section 1441 of title 28 of the United States Code. Citigroup Incorporated now

moves to strike the notice of removal of both actions or remand the pending action

to state court. Citigroup also requests costs and fees for filing this motion. For the

reasons stated below, Citigroup's motion to strike the notice of removal in the original action is denied, its motion to remand the pending action is granted, and its motion for costs and fees is also granted.

## II.    BACKGROUND

In September 2008, in the midst of a substantial credit and liquidity crisis that led to the collapse of many other banks, the Federal Deposit Insurance Corporation ("FDIC"), the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, and the Federal Reserve Bank of New York ("FRBNY") stepped in to orchestrate a rescue of Wachovia.[1]  Subsequently, Wells Fargo entered merger negotiations with the ailing bank.[2]  On September 28, however, Wells Fargo decided not to participate in Wachovia's rescue.[3]

On September 29, Citigroup reached an agreement-in-principle with Wachovia to acquire the bank and rescue it from FDIC receivership.[4]  The two banks also entered into an exclusivity agreement pursuant to which Wachovia "agreed not to negotiate or enter into any competing acquisition agreement during

---

[1]    *See* Verified Complaint ("Verified Compl."), Ex. D to 10/10/08 Declaration of Gregory P. Joseph, counsel for Citigroup ("Joseph Decl."), ¶¶ 2, 3.

[2]    *See id.* ¶ 3.

[3]    *See id.*

[4]    *See id.* ¶ 4.

2

the exclusivity period" which was to end on October 6.[5]  Around October 3, as

Citigroup and Wachovia were nearing the signing of a deal, Wachovia received an

acquisition offer from Wells Fargo which it subsequently accepted and announced

to the public.[6]  One of the differences between Citigroup's and Wells Fargo's

offers was that the latter triggered the golden parachutes of Wachovia CEO Robert

Steel and other senior executives such that they received a $225 million windfall.[7]

On October 4, Citigroup commenced the original action against

Wachovia and Wells Fargo, alleging breach of contract against Wachovia for

violating the exclusivity agreement, tortious interference with contract against

Wells Fargo, and that the merger agreement between the defendants should be

invalidated pursuant to section 126(c) of the Emergency Economic Stabilization

Act ("EESA").[8]  Section 126(c) of the EESA provides in its entirety that:

---

[5]      *Id.* ¶ 8.  *See also* Exclusivity Agreement, Ex. A to Joseph Decl., at 1.

[6]      *See* Verified Compl. ¶¶ 12-13, 15-17.

[7]      *See id.* ¶ 18.

[8]      *See* Verified Complaint in Action with Index No. 08602874, Ex. 15 to Declaration of George T. Frampton, Jr., former counsel for Wachovia ("Frampton Decl.").  Because October 4, 2008 was a Saturday, the Complaint in this action was served on defendants but not filed until October 6.  *See* Frampton Decl. ¶¶ 2, 17; Request for Judicial Intervention in Action with Index Number 602874/08 ("RJI 602874"), Ex. 14 to Frampton Decl.

On March 5, 2009, Boies, Schiller & Flexner LLP withdrew as

> No provision contained in any existing or future standstill, confidentiality, or other agreement that, directly or indirectly (A) affects, restricts, or limits the ability of any person to offer to acquire or acquire, (B) prohibits any person from offering to acquire or acquiring, or (C) prohibits any person from using any previously disclosed information in connection with any such offer to acquire or acquisition of, all or part of any insured depository institution, including any liabilities, assets, or interest therein, in connection with any transaction in which the Corporation exercises its authority under section 11 or 13, shall be enforceable against or impose any liability on such person, as such enforcement or liability shall be contrary to public policy.

Later that day, the original action was removed to federal court by the defendants and then dismissed by Citigroup.[9]  Citigroup then commenced the pending action in state court, this time omitting the cause of action under the EESA.[10]  Citigroup subsequently sent defendants a "conformed" Verified Complaint which is the operative Complaint in the pending action.[11]  This Complaint, however, contains a request for relief under the EESA in its Prayer for Relief.[12]

---

Wachovia's counsel, and Friedman, Kaplan, Seiler & Adelman LLP was retained as counsel for both Wachovia and Wells Fargo.

[9]     *See* Frampton Decl. ¶¶ 2, 4.

[10]    *See* Joseph Decl. ¶ 4; Amended Verified Complaint, Ex. 2 to Frampton Decl.

[11]    *See* Verified Compl.

[12]    *See* Prayer for Relief, Verified Compl.

4

Meanwhile, Wachovia had filed a separate action against Citigroup in this Court seeking a declaratory judgment that the Wells Fargo-Wachovia merger was "valid, proper, and not prohibited by [the exclusivity agreement between Citigroup and Wachovia]."[13] This Court issued an Order to Show Cause why Citigroup should not be preliminarily enjoined from interfering with the Wachovia-Wells Fargo merger.[14] The state court also entered an Order to Show Cause why Wachovia and Wells Fargo should not be preliminarily enjoined from completing the merger in this action.[15]

On October 6, at the behest of the FRBNY, Citigroup, Wells Fargo, and Wachovia entered into a Standstill Agreement pursuant to which they agreed to refrain from all "formal litigation activity."[16] The standstill period was to end

---

[13]    *See* Frampton Decl. ¶ 10; Complaint in *Wachovia Corp. v. Citigroup, Inc.*, No. 08 Civ. 8503, ¶ 1.

[14]    *See* Order to Show Cause in Wachovia Action, Ex. 7 to Frampton Decl.

[15]    *See* Frampton Decl. ¶¶ 13, 14; Order to Show Cause in Citigroup Action, Ex. 11 to Frampton Decl.

[16]    *See* 10/6/08 Standstill Agreement, Ex. E to Joseph Decl.

5

on October 8.[17]  Prior to the end of the period, the parties decided to extend the agreement until October 10.[18]

On October 9, Citigroup published a press release announcing that it was unable to reach an agreement with Wells Fargo.[19]  Citigroup stated that it was still willing to complete a transaction with Wachovia and that it planned to pursue damage claims against Wachovia, Wells Fargo, and their officers and directors for breach of contract and tortious interference with contract.[20]  After receipt of this press release, Wachovia and Wells Fargo filed their notices of removal of the original action – dismissed on October 4 – and the pending action.[21]  The original action was assigned docket number 08 Civ. 8666, while the pending action was assigned docket number 08 Civ. 8668.  Removal of the pending action was predicated on Citigroup's reference to the EESA in the Prayer for Relief, which

---

[17]    *See id.*

[18]    *See* 10/8/08 Extension of Standstill Agreement, Ex. F to Joseph Decl.

[19]    *See* 10/9/08 Citigroup Press Release, Ex. I to Joseph Decl.

[20]    *See id.*

[21]    *See* 10/9/08 Notices of Removal.  The notices are identical in both cases.

the defendants claimed supported the exercise of federal jurisdiction under section

1331 of title 28 of the United States Code.[22]

## III.   LEGAL STANDARD

### A.   Motion to Strike

In considering a motion to strike, courts generally apply the same test

used to determine a motion to dismiss pursuant to Federal Rule of Civil Procedure

Rule 12(b)(6).[23]  Motions to strike are generally disfavored and will be denied

unless the matter asserted clearly has no bearing on the dispute[24] or the matter is

significantly prejudicial to one of the parties.[25]

### B.   Motion to Remand

Section 1441(a) of title 28 of the United States Code allows the

removal of "any civil action brought in a State court of which the district courts of

the United States have original jurisdiction" to federal court.  Section 1331 of title

28 of the United States Code provides that a federal court has "original

---

[22]     *See* 10/9/08 Notice of Removal of Pending Action ¶¶ 2, 3.

[23]     *See Diesel Props. S.R.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ.
9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008).

[24]     *See id*.

[25]     *See Rochester-Genesee Regional Transp. Authority v. Hynes-Cherin*,
531 F. Supp. 2d 494, 519 (W.D.N.Y. 2008).

jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States."

### 1.    The Well-Pleaded Complaint Rule

"As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."[26]  To determine whether the claim arises under federal law, a court examines the "well-pleaded" allegations of the complaint and ignores potential defenses: "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."[27]  Under the well-pleaded complaint rule, "the plaintiff is the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."[28]

In addition, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced."[29]  Indeed, "'[i]t is not enough that a plaintiff alleges

---

[26]     *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

[27]     *Id*.

[28]     *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  *Accord The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon . . . .").

[29]     *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 n.6 (1986).

8

some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States.'"[30] "Thus, a defense that relies on the preclusive effect of a prior federal judgment[] or the pre-emptive effect of a federal statute[] will not provide a basis for removal."[31] "Nor can federal jurisdiction rest upon an actual or anticipated counterclaim."[32]

### 2. Federal Preemption

Where a plaintiff asserts no federal cause of action on the face of the complaint, the court then looks to whether one of three situations exists such that the state law action may nevertheless be removed to federal court: (1) "when Congress expressly so provides;" (2) "when a federal statute wholly displaces the state-law cause of action through complete preemption;"[33] and (3) where an element of the plaintiff's state law claim turns on a substantial federal question and exercising jurisdiction would not disrupt the balance intended by Congress

---

[30]    *Beneficial Nat'l Bank*, 539 U.S. at 6 (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

[31]    *Id.* (citations omitted).

[32]    *Vaden v. Discover Bank*, — S. Ct. —, 2009 WL 578636, at *7 (Mar. 9, 2009) (citing *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 832 (2002)).

[33]    *Beneficial Nat'l Bank*, 539 U.S. at 8.

9

between state and federal courts.[34]  An example of the first situation is the Price-

Anderson Act, which contains "an unusual preemption provision [] that not only

gives federal courts jurisdiction over tort actions arising out of nuclear accidents

but also expressly provides for removal of such actions brought in state court even

when they assert only state-law claims."[35]

　　　　　To determine whether the second situation – complete preemption –

applies, a court must (1) look to whether the federal statute provides "the

exclusive cause of action for the claim asserted and also set[s] forth procedures

and remedies governing that cause of action" and (2) determine whether Congress

intended such causes of action to be treated as "arising under the laws of the

United States . . . ."[36]  The Supreme Court has found complete preemption for

certain causes of action under only three statutes – section 301 of the Labor

Management Relations Act ("LMRA"), section 502(a) of the Employee

---

[34]　　*See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (holding that federal jurisdiction may be exercised over a state law action that raised a substantial and disputed federal issue so long as the action may be entertained without affecting the "normal currents of litigation").

[35]　　*Beneficial Nat'l Bank*, 539 U.S. at 6 (citing *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484-85 (1999)).

[36]　　*Id.* at 8.

Retirement Income Security Act ("ERISA"), and sections 85 an 86 of the National Bank Act ("NBA").[37]

Even less frequently encountered is the last situation set out above. In *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, the Supreme Court confirmed the applicability of a "longstanding" but alternative "variety of federal 'arising under' jurisdiction" – that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."[38]

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.[39]

Nevertheless, the Supreme Court limited this avenue to those cases that would not disrupt the "division of labor between state and federal courts."[40]   The Court

[37]   *See id.* at 8, 11.

[38]   545 U.S. at 312.

[39]   *Id.*

[40]   *Id.* at 319. The Supreme Court distinguished *Grable* from the facts of *Merrell Dow*, explaining that in the latter case, the "combination of no federal cause of action and no preemption of state remedies for misbranding" was an "important clue to Congress' conception of the scope of jurisdiction to be exercised under [section 1331]." *Id.* at 318. In *Merrell Dow*, respondents had

11

expressed concern that allowing certain cases that turned on a federal issue to be

adjudicated in the federal courts would "herald[] a potentially enormous shift of

traditionally state cases into federal courts."[41] Thus, a federal court may exercise

original jurisdiction over a plaintiff's state law claim only if that claim turns on the

resolution of a substantial federal question and if exercising jurisdiction would not

"materially affect, or threaten to affect, the normal currents of litigation" by

introducing a flood of state claims into federal courts.[42]

### C.    Costs and Fees

---

sought to establish petitioner pharmaceutical company's per se negligence by
demonstrating that petitioner had failed to comply with certain branding
guidelines pursuant to the Federal Food, Drug, and Cosmetic Act. *See Merrell
Dow*, 478 U.S. at 805-06. The *Grable* Court explained that federal jurisdiction
was declined in *Merrell Dow* because exercising jurisdiction over that case would
have opened the floodgates to federal court: "[I]f the federal labeling standard
without a federal cause of action could get a state claim into federal court, so
could any other federal standard without a federal cause of action. And that would
have meant a tremendous number of cases." *Grable*, 545 U.S. at 318. The Court
noted that the same could not be said for "rare state quiet title action[s] that
involve[] contested issues of federal law." *Id.* at 319.

[41]    *Grable*, 545 U.S. at 319. The Court was referring specifically to the
potential impact of allowing cases such as *Merrell Dow* or others arising under the
federal labeling standard to be adjudicated in federal court. *See id.*

[42]    *Id.*

Section 1447(c) provides that "[a]n order remanding the case may

require payment of just costs and any actual expenses, including attorney fees,

incurred as a result of the removal."

> The appropriate test for awarding fees under [section]
> 1447(c) should recognize the desire to deter removals
> sought for the purpose of prolonging litigation and
> imposing costs on the opposing party, while not
> undermining Congress' basic decision to afford defendants
> a right to remove as a general matter, when the statutory
> criteria are satisfied.[43]

"Absent unusual circumstances, courts may award attorney's fees under [section]

1447(c) only where the removing party lacked an objectively reasonable basis for

seeking removal."[44] "In applying this rule, district courts retain discretion to

consider whether unusual circumstances warrant a departure from the rule in a

given case."[45]

## IV. DISCUSSION

### A. The Original Action

Citigroup moves to strike the notice of removal in the original action,

arguing that defendants filed the notice even though they knew that Citigroup had

---

[43]    *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

[44]    *Id.* at 141.

[45]    *Id.*

13

voluntarily dismissed the action on October 4, 2008.[46] The original action was removed to federal court on October 9, 2008 and assigned to Judge Lewis Kaplan.[47] On October 24, the action was dismissed by the Court pursuant to the notice of dismissal filed by Citigroup on October 4.[48] Because the original action is not before this Court and has in any case been dismissed, Citigroup's motion to strike the notice of removal in this action is denied.

### B.    The Pending Action

#### 1.    Reference to the EESA in the Prayer for Relief

Citigroup also argues that the notice of removal in the pending action was filed improperly because the Complaint asserts no federal cause of action.[49] It contends that defendants should not be allowed to base the removal of the action on the reference to the EESA in the Prayer for Relief, which was clearly a typographical error on the part of Citigroup's counsel.[50] Citigroup explains that

---

[46]    *See* Citigroup Inc.'s Memorandum of Law in Support of Motion to Strike, or, Alternatively, to Remand ("Citigroup Mem.") at 6.

[47]    *See* Docket of Civil Case No. 08 Civ. 8666.

[48]    *See* 10/24/08 Letter Endorsement by Judge Lewis Kaplan in 08 Civ. 8666.

[49]    *See* Citigroup Mem. at 8-10.

[50]    *See id.* at 7.

14

although the original Complaint had included a cause of action under the EESA, Citigroup had decided not to bring that claim, and in deleting all reference to the EESA, had neglected to delete the reference to the EESA in the Prayer for Relief.[51]

Defendants argue that Citigroup's contention that it had made a typographical error when it neglected to delete the EESA relief from the Prayer for Relief is disingenuous.[52] Defendants note that previous versions of the Complaint – including the version that was filed that contained the EESA cause of action – had not mentioned the EESA in the Prayer for Relief.[53] Thus, they argue, Citigroup affirmatively added that language to the Complaint in the pending state action.[54] They further assert that the Complaint sets forth "the factual predicate for a claim under Section 126(c) of the EESA, including the allegation that the proposed Citigroup-Wachovia transaction was one in which the FDIC exercised its authority under Section 13 of the FDIA."[55] They contend that Citigroup should

---

[51]     *See id.*

[52]     *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand ("Def. Mem.") at 12.

[53]     *See id.*

[54]     *See id.*

[55]     *Id.* at 1.

not be able to "have it both ways, *i.e.*, retain its federal cause of action but avoid removal."[56]

I find defendants' arguments to be unpersuasive. *First*, Citigroup does not assert a federal cause of action in the Complaint – indeed it only asserts two causes of action, breach of contract and tortious interference with contract – and mentions the EESA only in the Prayer for Relief. It is reasonable that Citigroup simply neglected to delete this one reference to the EESA when it served its latest Complaint.[57] This Court will not base subject matter jurisdiction on a typographical error.

*Second*, under the well-pleaded complaint rule, a plaintiff may avoid federal jurisdiction by relying solely on state law.[58] Thus, as long as Citigroup did not intend to plead a federal cause of action under the EESA, it is irrelevant that

---

[56]     *Id.* at 12.

[57]     Although it is curious that reference to the EESA in the Prayer for Relief section was not made in previous versions of the Complaint including the original complaint, Citigroup explained to this Court's satisfaction that the presence of such reference was the result of multiple revisions that were made overnight and possible word processing errors. *See* 3/11/09 Transcript of Oral Argument ("Oral Arg. Tr.") at 43:20-44:5.

[58]     *See Caterpillar*, 482 U.S. at 392 ("[T]he plaintiff is the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

16

the facts in the Complaint would support one.[59] Citigroup has unequivocally

represented to the Court – at the initial pretrial conference, in its moving papers,

and at oral argument – that it is not bringing any federal claim – under the EESA

or any other statute.[60] It therefore will not have it "both ways" as defendants

contend. In addition, the state court will likely require Citigroup to amend its

Complaint or strike the reference to the EESA from the Prayer for Relief.[61]

## B.    Federal Preemption

---

[59]    *See Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986) ("[W]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground to defeat removal.") (citations and internal quotation marks omitted).

[60]    *See* Citigroup Inc.'s Reply Memorandum of Law in Support of Motion to Strike or, Alternatively, to Remand ("Citigroup Rep. Mem.") at 5; Oral Arg. Tr. at 34:10-11 ("MR. JOSEPH: . . . We are not asserting a claim under 126(c). . . ."); *id.* at 36:3-4 ("MR. JOSEPH: . . . We had a cause of action based on 126(c). That was stricken.").

[61]    Defendants also complain that Citigroup failed to discover its alleged error until after its case was removed on October 9, 2008, four days after the Complaint in the pending action was filed and served on counsel for defendants. *See* Def. Mem. at 12. However, Citigroup points out that the Standstill Agreement prohibiting it from engaging in "formal litigation activity" hampered its ability to amend the Complaint prior to the filing of the notices of removal. Citigroup Rep. Mem. at 7 n.5. The standstill period began on October 6, 2008 and ended on October 10. *See* 10/6/08 Standstill Agreement; 10/8/08 Extension of Standstill Agreement. Thus, Citigroup could not have amended the Complaint to correct any errors without violating the Standstill Agreement.

As an initial matter, defendants do not – and indeed, cannot – contend

that Congress expressly provided for federal preemption under section 126(c) of

the EESA.  Section 126(c) of the EESA differs substantially from the Price-

Anderson Act.  Congress did not explicitly provide for a federal cause of action in

section 126(c), nor did it provide for removal of state law causes of action that

come within the ambit of the provision.

Defendants argue instead that Citigroup's state law claims are

completely preempted by section 126(c) of the EESA.[62]  They contend that "the

preemptive force of" [the EESA] is "so powerful as to displace entirely any state

cause of action 'for violation of [specific kinds of] contracts . . . .'"[63]  Defendants

also assert that complete preemption applies because "the longstanding federal

interest in the national banking industry," together with the fact that the FDIC

must get involved before section 126(c) is triggered, "leaves little doubt that

Congress would not have wished state law or state courts to assume a role in

---

[62]     *See* Def. Mem. at 14.

[63]     *Id.* at 15 (quoting *Franchise Tax Bd. of the State of Cal. v. Constr.*
*Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983)).

18

applying [s]ection 126(c) or – even worse – in applying state law inconsistent with [s]ection 126(c)."[64]

Defendants misunderstand the law on complete preemption. As discussed, complete preemption only applies where the federal statute provides an exclusive cause of action for the claims asserted by a plaintiff and where the legislative history indicates that Congress intended such cause of action to be treated as "arising under the laws of the United States . . . ."[65] Section 126(c) of the EESA does not even satisfy the first prerequisite. Unlike the LMRA, the ERISA, and the NBA, section 126(c) does not provide an exclusive cause of action for Citigroup's claims, and it certainly does not set forth procedures and remedies governing such exclusive causes of action. Indeed, counsel for defendants conceded at oral argument that section 126(c) does not provide for *any* cause of action.[66] Complete preemption therefore does not apply in this case.[67]

---

[64]     *Id.* at 16.

[65]     *See Beneficial Nat'l Bank*, 539 U.S. at 8.

[66]     *See* Oral Arg. Tr. 12:12-17 ("MR. SEILER [counsel for defendants]: [Complete preemption has] only been invoked three times: The Wagner Act, ERISA, and the National Banking Act . . . In all three of those there was a statutory regime that allowed for lawsuits in federal court, which we do not have here.").

[67]     Defendants also argue that the EESA is newly enacted and therefore this Court should "examine it to determine whether Congress did or would have

19

Defendants also argued for the first time at oral argument that this

case fits squarely within the framework of *Grable*.[68]  They contended that this

Court has "arising under jurisdiction" because Citigroup's "right to relief depends

on the construction or application of federal law."[69]  While defendants' statement

---

wanted it to confer federal jurisdiction *without* simultaneously creating a federal
cause of action."  Def. Mem. at 15.  To the extent they are arguing that
Congressional intent alone is sufficient to provide this Court with jurisdiction in
the absence of a law providing for a federal cause of action, their argument has no
merit.  *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491 (1983)
("Congress may not expand the jurisdiction of the federal courts beyond the
bounds established by [Article III of ] the Constitution.").

[68]   *See* Oral Arg. Tr. at 21:9 ("MR. SEILER: This is [o]n all fours with
*Grable*.").  Defendants also referred to *Grable* in arguing that a federal statute
need not provide for an exclusive cause of action in order for complete preemption
to apply.  *See id.* at 19:21-25 ("MR. SEILER: There is no case where any federal
court, including the Supreme Court of the United States, has said unless there is a
private federal right of action, there can't be complete preemption.  There are three
cases where that existed, but the Supreme Court did not say it's required.  Indeed,
in *Grable*, when you read arising under as opposed to complete preemption, it
almost seems like it's not.").  Defendants confuse the doctrine pronounced by the
Supreme Court in *Grable* with the doctrine of complete preemption.  The Supreme
Court has held complete preemption to apply to certain causes of action under
only three statutes precisely because an exclusive cause of action was provided for
under those statutes.  *See Beneficial Nat'l Bank*, 539 U.S. at 8 ("In the two
categories of cases where this Court has found complete preemption – certain
causes of action under the LMRA and ERISA – the federal statutes at issue
provided the exclusive cause of action); *id.* at 11 ("Because [sections] 85 and 86
[of the NBA] provide the exclusive cause of action for [usury] claims, there is, in
short, no such thing as a state-law claim of usury against a national bank.").

[69]   Oral Arg. Tr. at 20:15-21:21.

20

of the law in *Grable* is correct, their application of the facts of this case to that law is flawed.

In *Grable*, the Supreme Court held that federal jurisdiction should be exercised over Grable's quiet title claim because an "essential element" of its claim turned on the meaning of a federal statute.[70] The Court reasoned that because Grable had "premised its superior title claim on a failure by the IRS to give it adequate notice [of the sale of Grable's property], as defined by federal law," Grable's claim "sensibly belongs in a federal court."[71] Thus, Grable's "right to relief" depended on a construction of federal law.

The same cannot be said about this case. Nothing in the Complaint suggests that Citigroup would be required to establish the meaning of any federal statute to succeed on its claims for breach of contract and tortious interference with contract. Indeed, at the oral argument on this motion, counsel for defendants could not identify any element of either of plaintiff's claims that would require analysis or interpretation of a federal statute.[72]

---

[70]    545 U.S. at 315.

[71]    *Id.* at 314-15.

[72]    *See* Oral Arg. Tr. at 46:19-47:17.  Defendants also contend that Citigroup and Wachovia would not have entered into an exclusivity agreement without the approval of the transaction by the FDIC and that this fact provides

Despite his many attempts, the best argument counsel could put forth was that Citigroup would have to show that the exclusivity agreement was not "void" by public policy and section 126(c) of the EESA in order to succeed on its claims.[73]  However, as I explained at oral argument, Citigroup is not required to "disprove all defenses" to its claims.[74]  At best, section 126(c) of the EESA may extinguish certain claims based on the existence of a binding agreement and arising out of offers that have been made to acquire a failing bank.  Thus, it may provide Wachovia, Wells Fargo, or both defendants with a federal *defense* against

_____

federal jurisdiction under *Grable. See id.* at 24:11-25.  However, there is no suggestion that the exclusivity agreement was entered into at the behest of the FDIC rather than Citigroup, which hoped to protect itself while it negotiated with Wachovia.  Even if Citigroup and Wachovia had entered the agreement at the direction of the FDIC, this would still not transform Citigroup's claim into one that "arises under" federal law as the Supreme Court has defined the term in *Grable.*

[73]     Oral Arg. Tr. at 46:19-47:7 ("THE COURT: . . . What element of a claim, a breach of contract or tortious interference, involves [Citigroup] proving or disproving the applicability of a federal statute? . . . MR. SEILER: [It] is going to want to prove that [the exclusivity agreement] is not void because of public policy, because the very statute – . . . .")

[74]     *Id.* at 47:8-12 ("THE COURT: [Citigroup] doesn't need to prove that. [It] doesn't have to disprove all defenses.  This is elementary.  To state your affirmative case, you prove the elements of the cause of action.  You leave to the other side to say that's void as against public policy.  But that's a defense.").

22

Citigroup's claim.[75]  It would be erroneous, however, to say that Citigroup's right

to relief turns on section 126(c) of the EESA.  And, it is well-established that the

existence of a federal defense will not cause a state law claim to be removable to

federal court.[76]  Because this Court does not have original jurisdiction over the

pending action, I hereby remand the action to state court.[77]

---

[75]   The Court makes no determination at this time as to whether section
126(c) of the EESA precludes Citigroup's claims.

[76]   *See Vaden*, 2009 WL 578636, at *6 ("Federal jurisdiction cannot be
predicated on an actual or anticipated defense.").  Wachovia and Wells Fargo have
also asserted counterclaims against Citigroup pursuant to section 126(c) of the
EESA. *See* Wachovia's Answer to Plaintiff's Complaint and Counterclaims of
Defendant Wachovia Corp. ¶¶ 90-111; Answer and Counterclaim of Defendant
Wells Fargo & Co. ¶¶ 95-100.  They seek declaratory judgments that the merger
transaction between the two banks was "valid, proper and not prohibited" by the
exclusivity agreement because section 126(c) renders the agreement
unenforceable.  Prayer for Relief, Wachovia's Answer to Plaintiff's Complaint and
Counterclaims of Defendant Wachovia Corp.; Prayer for Relief, Answer and
Counterclaim of Defendant Wells Fargo & Co.  However, it is also well-settled
that assertion of a counterclaim pursuant to federal law does not render a state law
action removable to federal court. *See Vaden*, 2009 WL 578636, at *7 (citing
*Holmes Group*, 535 U.S. at 832).

[77]   I have found no case in this Circuit that supports the striking of a
notice of removal rather than a remand of the underlying action if jurisdiction is
lacking.  I therefore decline to strike the notice of removal in the pending action
and instead remand the case to state court.

          Citigroup makes additional arguments with respect to its motion to
remand. *First*, Citigroup contends that defendants violated the Standstill
Agreement when they filed the notices of removal during the standstill period. *See*
Citigroup Mem. at 5-7. *Second*, Citigroup maintains that Wachovia's waiver of

## C.   Costs and Fees

Finally, I turn to whether costs and fees should be granted to

Citigroup for filing this motion. The Complaint alleges only two causes of action,

neither of which "arises under" federal law. Defendants point to the reference to

the EESA in the Prayer for Relief, but defendants must have known that it was

Citigroup's intention to delete the EESA claim from its Complaint. Indeed,

Citigroup had manually stricken all references to the EESA in the body of the

"Amended Verified Complaint," which had been sent to defendants when

Citigroup commenced the second action in state court.[78]

Even if it was initially unclear to defendants that the reference to the

EESA was a typographical error, once they were so apprised, they should have

proceeded to litigate the case in state court. Instead, defendants not only removed

the action, but opposed the motion to remand and argued federal preemption even

though preemption does not apply in this case.

I therefore find that there was no "objectively reasonable" basis for

removal of this action and exercise my discretion to grant costs and fees to

---

the right to object to Citigroup's choice of forum precludes removal of the action
by defendants. *See id.* at 11-14. Because I have already decided that remand is
required, these arguments need not be considered.

[78]     *See* Amended Verified Complaint.

24

Citigroup. Citigroup has submitted information regarding its fees for filing this motion.[79] Although it appears that the fees spent on this motion approximated more than \$90,000, Citigroup requests only \$10,000.[80] I therefore direct Wachovia and Wells Fargo to pay \$10,000 in fees to Citigroup.

## V.   CONCLUSION

For the reasons stated above, Citigroup's motion to strike the notice of removal in the original action is denied. Citigroup's motion to remand the pending action and for costs and fees is granted. Wachovia and Wells Fargo are directed to pay \$10,000 in costs and fees to Citigroup. The Clerk of the Court is directed to close this motion (document no. 5).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 20, 2009

---

[79]   *See* 3/12/09 Declaration of Gregory P. Joseph.

[80]   *See id.* ¶¶ 3, 4.

25

## - Appearances -

**For Citigroup:**

Gregory P. Joseph, Esq.
Pamela Jarvis, Esq.
Sandra M. Lipsman, Esq.
Mara Leventhal, Esq.
Rachel M. Cherington, Esq.
Samuel N. Fraidin, Esq.
Gregory P. Joseph Law Office LLC
485 Lexington Ave
New York, NY 10017
(212) 407-1228

Paul A. Engelmayer, Esq.
Charles C. Platt, Esq.
Wilmer, Cutler, Hale & Dorr, L.L.P. (NYC)
399 Park Avenue
New York, NY 10022
(212) 230-8889

**For Wachovia and Wells Fargo:**

Eric Seiler, Esq.
Bruce S. Kaplan, Esq.
Andrew W. Goldwater, Esq.
Andrew W. Shilling, Esq.
Friedman, Kaplan, Seiler and Adelman
1633 Broadway
New York, NY 10019
(212) 833-1100